[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff First Constitution Bank holds a promissory note executed by the defendants Diane Masotta and Frederick P. Masotta (the "defendants"). The plaintiff has applied for a prejudgment remedy to attach three properties. The defendants concede owing the debt, which includes the full principal balance of the note plus interest and attorneys' fees, and agree that the plaintiff has established probable cause sufficient to attach two of the three properties, the first at 181 Shepard Avenue in CT Page 9029 Hamden and the second at 273 South Main Street in Cheshire. The prejudgment remedy application is therefore granted as to those two properties.
The third property which the plaintiff seeks to attach is located at 170 Hillfield Road in Hamden, (the "home") and is owned of record by the defendants Suzanne Masotta and Gail Masotta O'Keefe, the daughters of Diane and Frederick Masotta. The defendants conveyed title to the home to their daughters shortly before the note matured. The plaintiff claims that the transfer of the home was a fraudulent transfer under the Uniform Fraudulent Transfer Act, P.A. 91-247 (the "Act"), and that plaintiff is therefore entitled to an attachment of this property under 8(2) of the Act. This is disputed by the defendants.
On September 10, 1991, the defendants signed a promissory note payable to the plaintiff for $246,733.76. The note was due and payable in full ninety days later, on December 9, 1991, and required monthly interest payments. The principal of the note represented the outstanding balance due on a line of credit extended by the plaintiff to the defendants, which had come due on May 10, 1991, but had not been paid. On November 29, 1991 the defendants executed a quit claim deed for their home to their daughters Gail O'Keefe and Suzanne Masotta. No consideration was paid for the conveyance; it was a gift from the parents to their daughters. The deed was recorded in the Hamden Land Records on December 5, 1991. An officer of the plaintiff discovered the transfer in January 1992 when she went to the Town Hall to check the title to the home. The defendants contend that the transfer was made as part of ongoing estate planning and was not fraudulent.
There are two types of fraudulent conveyances, both under the common law interpreting Connecticut's former statute, Connecticut General Statutes 52-552, and under the new Act. See Weiss, Connecticut Fraudulent Conveyance Law, 11 Univ. of Bridgeport Law Review 489 (1991); Weiss, Connecticut Adopts Uniform Fraudulent Transfer Act, Connecticut Lawyer (Dec. 1991). The first type is an intentional fraudulent conveyance. The plaintiff here contends that the defendants have made an intentional fraudulent conveyance under 5(a)(1) of the Act by transferring the home "with actual intent to hinder, delay or defraud" their creditors. The second type of fraudulent conveyance is a constructive fraudulent conveyance, which is not claimed here. CT Page 9030
The defendant disputes the threshold issue of whether the plaintiff is a creditor who can challenge the conveyance of the home made on November 29, 1991. Section 5(a) of the Act states that a transfer is fraudulent as to a creditor "if the creditor's claim arose before the transfer was made . . . ." The defendant argues that because the note in question did not mature until December 9, 1991, the plaintiff did not become a creditor of the defendants until December 9, several days after the transfer of the home. This argument ignores, however, the statutory definitions of "claim" and "creditor" as set forth in 2 of the Act. Claim is defined as "a right to payment whether or not the right is . . . matured, unmatured . . . ." (Emphasis added.) The plaintiff's right to payment, although unmatured, arose upon execution of the promissory note in September, 1991. The plaintiff was a "creditor" of the defendants on November 29, 1991, because the plaintiff held an unmatured right to payment, which constitutes a "claim." There is no merit to the defendants' contention.
The essence of the dispute between the parties is whether the plaintiff has sufficiently shown that the transfer of the home was made with actual intent to hinder, delay or defraud creditors. Recognizing that direct evidence of such intent may be infrequently found, the Act provides that in determining actual intent, "consideration may be given, among other factors" (emphasis added) to eleven stated factors, which are so-called "badges of fraud." The plaintiff contends that it has provided evidence of at least five badges of fraud; the defendants concede three. There is no question that the transfer of the home was made to relatives, defined as "affiliates" under the Act; and that the defendants retained possession of the home because they have continued to live in it. There is no dispute that the defendants received less than reasonably equivalent value for the transfer because it was a gift and no consideration was paid.
The plaintiff claims also that the transfer was concealed. Although the defendants did not inform the plaintiff of the transfer when made, this is not sufficient evidence of concealment. The deed was recorded in the public land records reasonably promptly after execution, and there was no evidence that the defendants ever falsely denied the transfer. The plaintiff also claims that the transfer occurred shortly before or shortly after the debt was incurred. This claim has no merit. The debt was initially incurred in May 1991, and then reduced to CT Page 9031 the promissory note in question in September, 1991. The November transfer did not occur before the debt was incurred. Nor can it be said that the transfer occurred "shortly after" the debt was incurred. The transfer incurred instead shortly before the maturity date of the note. The court finds that this is one of the "other factors" which can be considered by the court as provided in 5(b) of the Act, but it is not one of the stated badges of fraud. Of the enumerated badges of fraud, the plaintiff has presented evidence sufficient to establish probable cause with respect to three. The Act does not require that any specific number of badges of fraud must be found, nor does it limit the court to the enumerated factors.
The defendants contend, and the court finds, that the defendants were solvent on November 29, 1991. Insolvency is one of the eleven badges of fraud set forth in the Act. However, insolvency is only one of many factors to be considered on a claim of intentional fraudulent transfer; it is not one of the two major elements of the fraud, as would be the case if the claim were one of constructive fraudulent transfer. Weiss, Connecticut Fraudulent Conveyance Law, supra at 511-528. Despite their I solvency, however, the defendants' financial condition in November, 1991, was strained. Although all bank obligations, business and personal, were current at that time, Mr. Masotta was using personal savings and liquidating other personal assets in order to pay the loan obligations. Income from the businesses was not sufficient to pay the obligations. Mr. Masotta was clearly aware in mid-November that the $246,733.76 note to the plaintiff was coming due on December 9, and that the plaintiff would not grant any extensions for payment. He also knew that he did not have sufficient liquid assets to pay the note.
In his testimony Mr. Masotta firmly expressed his consistent intention to protect his home from the plaintiff. He had "no intention of giving the house up," although he knew that the plaintiff wanted a mortgage on the home. Mr. Masotta testified that he told officials of the plaintiff he would not agree to a mortgage on his house because he had worked too hard to obtain the house and he was not going to "roll over and play dead" concerning the house. A review of the defendants' financial statement shows that the home was the most valuable unencumbered real estate asset owned by the defendants within the State of Connecticut.
The defendants argue that the transfer of the home was part CT Page 9032 of their estate planning, and was not fraudulent. There was some substantiation of this claim in that the defendants had been conveying some assets to their children recently to comply with the advice given them for years by their attorney and accountant to transfer assets out of their name. However, there was no evidence that the transfer of the home was part of any comprehensive estate plan occurring in the fall of 1991, and the transfer of the home differed in detail and complexity from other transfers previously made to maximize tax advantages. This transfer was a simple quit claim deed put of record four days before the note came due. The estate planning claim is also belied by the fact that the defendants purchased a parcel of real estate during 1991, and put it in their own name, thus adding to the assets in their name. The evidence of actual intent to hinder, delay or defraud the plaintiff based on the three badges of fraud, the defendants' financial distress, their intent to protect their home and their awareness of the bank's focus on their home far outweighs the evidence that the transfer was made for estate planning purposes.
The defendants' final contention is that the plaintiff bears the burden of proving its allegations of fraudulent transfer by the clear and convincing standard of proof in order to obtain the prejudgment remedy against the home. It is true that fraudulent intent must be shown by "clear, precise and unequivocal evidence" and that this standard of proof applies to intra-familial conveyances. Tyers v. Coma, 214 Conn. 8, 11
(1990). However, the issue before the court on a prejudgment remedy application is one of "probable cause to sustain the validity of the plaintiff's claim." Connecticut General Statutes52-278d(a). The defendants have not offered the court any precedent or any analysis of how the probable cause standard and the clear, precise and unequivocal standard should be reconciled for purposes of acting on a prejudgment remedy application. If we assume that the plaintiff's burden in such a case is to establish probable cause that it will sustain the validity of its claim by clear, precise and unequivocal evidence, the court finds that the evidence presented meets that burden, particularly in light of Mr. Masotta's stated intention to protect the home.
The application for prejudgment remedy is granted as to the home as well as the other two properties. The court finds probable cause to sustain the validity of the plaintiff's claim of fraudulent transfer.
CT Page 9033 Vertefeuille, J.